UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  JS-6

| Case No. | CV 13-863 CAS (AGRx) | Date | May 8, 2013 |
|---|---|---|---|
| Title | ROBERT POTTER, ET AL. V. JPMORGAN CHASE BANK, N.A., ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants |
|---|---|
| Not Present | Not Present |

**Proceedings:** (IN CHAMBERS): MOTION TO DISMISS FOR LACK OF JURISDICTION THE FOURTH AMENDED COMPLAINT (Docket #29, filed February 21, 2013)

## I.   INTRODUCTION

Plaintiffs initiated this action in Los Angeles County Superior Court on April 15, 2011. The case was first removed to this Court on December 12, 2011 by defendants JP Morgan Chase Bank, N.A. ("Chase") and The Bear Stearns Companies, LLC ("Bear Stearns"). See Robert Potter, et al. v. JP Morgan Chase Bank, N.A., Case No. 11-CV-10255-CAS-AGRx. In an order dated April 2, 2012, the Court found that there was no proper basis for removal at that time, and remanded the case to Los Angeles County Superior Court. Id. dkt. # 37. Subsequently, defendant Federal Deposit Insurance Corporation ("the FDIC"), acting as the receiver for Washington Mutual Bank, F.A. ("WMB"), was named as a defendant in this case, and removed the case to this Court on February 7, 2013.

On February 21, 2013, the FDIC filed a motion to dismiss all claims against it for lack of subject matter jurisdiction. Plaintiffs submitted oppositions on April 8, 2013, and the FDIC replied on April 22, 2013. After considering the parties' arguments, the Court finds and concludes as follows.

## II.   BACKGROUND

Plaintiffs in this case are consumers who received loans secured by deeds of trust on real estate in California. FAC ¶ 21. Each plaintiff received his or her loan from one

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**   JS-6

| Case No. | CV 13-863 CAS (AGRx) | Date | May 8, 2013 |
|---|---|---|---|
| Title | ROBERT POTTER, ET AL. V. JPMORGAN CHASE BANK, N.A., ET AL. | | |

of the defendants in this case, and each plaintiff's loan was also serviced by one of the defendants. Id. Plaintiffs have alleged seven claims for relief: (1) fraudulent concealment, (2) intentional misrepresentation, (3) negligent misrepresentation, (4) unfair competition, (5) wrongful foreclosure, (6) improper influence over appraiser, and (7) declaratory relief. Additionally, this is a "mass joinder" lawsuit: hundreds of plaintiffs have joined in this action.

Prior to 2008, defendant WMB was one of the largest mortgage lenders and servicers in California and the United States. FAC ¶ 26. WMB acted as the "master servicer" for the loans and mortgages of hundreds of plaintiffs in this case. Id.

On September 25, 2008, the Office of Thrift Supervisors ("OTS") determined that WMB was "unable to pay its obligations or meet its depositors' demands in the normal course of business," and was "in an unsafe or unsound condition to transact business," and therefore appointed the FDIC to act as receiver for WMB. Dkt. #30, Ex. A. Shortly thereafter, on October 1, 2008, the FDIC published a notice to WMB's creditors in three newspapers around the country: the Wall Street Journal, the Seattle Times, and the Las Vegas Review-Journal. Dkt. #30, Nelson Decl. ¶ 3. This notice explained that any claims against WMB were to be submitted to the FDIC to be resolved in an administrative claims-resolution process. The deadline for submission was December 30, 2008. Id. Additionally, the FDIC published information about WMB's failure along with a description of the administrative claims process on its website. Id. ¶ 4.

It appears that no plaintiff submitted a claim to the FDIC before the December 30, 2008 deadline. Id. ¶ 5. According to the FDIC's records, however, two-hundred and eighteen plaintiffs filed claims after the deadline, and two-hundred and nine plaintiff have not filed claims at all. Id.

## III.  LEGAL STANDARD

A motion to dismiss an action pursuant to Fed. R. Civ. P. 12(b)(1) raises the question of the federal court's subject matter jurisdiction over the action. The objection presented by this motion is that the court has no authority to hear and decide the case. This defect may exist despite the formal sufficiency of the allegations in the complaint. See T.B. Harms Co. v. Eliscu, 226 F. Supp. 337, 338 (S.D. N.Y. 1964), aff'd 339 F.2d

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL** JS-6

| Case No. | CV 13-863 CAS (AGRx) | Date | May 8, 2013 |
|---|---|---|---|
| Title | ROBERT POTTER, ET AL. V. JPMORGAN CHASE BANK, N.A., ET AL. | | |

823 (2d Cir. 1964) (the formal allegations must yield to the substance of the claim when a motion is filed to dismiss the complaint for lack of subject matter jurisdiction). When considering a Rule 12(b)(1) motion challenging the substance of jurisdictional allegations, the Court is not restricted to the face of the pleadings, but may review any evidence, such as declarations and testimony, to resolve any factual disputes concerning the existence of jurisdiction. See McCarthy v. United States, 850 F.2d 558, 560 (9th Cir. 1988).

The burden of proof in a Rule 12(b)(1) motion is on the party asserting jurisdiction. See Sopcak v. N. Mountain Helicopter Serv., 52 F.3d 817, 818 (9th Cir. 1995); Ass'n of Am. Med. Coll. v. United States, 217 F.3d 770, 778-79 (9th Cir. 2000). If jurisdiction is based on a federal question, the pleader must show that he has alleged a claim under federal law and that the claim is not frivolous. See 5B Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure, § 1350, pp. 211, 231 (3d ed. 2004). On the other hand, if jurisdiction is based on diversity of citizenship, the pleader must show real and complete diversity, and also that his asserted claim exceeds the requisite jurisdictional amount of $75,000. See id.

## IV.  ANALYSIS

The FDIC argues that plaintiffs' claims against it should be dismissed for lack of subject matter jurisdiction because they were not submitted to the claims resolution process in accordance with the timeliness rules set out in the Financial Institutions, Reform, Recovery and Enforcement Act of 1989 ("FIRREA"). 12 U.S.C. § 1821(d)(3)–(10). Plaintiffs resist this conclusion on three grounds. First, plaintiffs argue that FIRREA's timeliness requirements are not jurisdictional. Second, plaintiffs argue that regardless of whether FIRREA's timeliness requirements are jurisdictional, their late filed claims fall under an exception to FIRREA's normal timeliness rules. Third, plaintiffs argue that even if their claims are untimely, their failure to file timely claims should be excused because they did not receive constitutionally or statutorily adequate notice regarding the mandatory claims resolution process. The Court considers each argument in turn.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

○

**CIVIL MINUTES - GENERAL**  JS-6

| Case No. | CV 13-863 CAS (AGRx) | Date | May 8, 2013 |
|---|---|---|---|
| Title | ROBERT POTTER, ET AL. V. JPMORGAN CHASE BANK, N.A., ET AL. | | |

**A.  FIRREA**

"Congress enacted the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, 12 U.S.C. § 1821, to enable the federal government to respond swiftly and effectively to the declining financial condition of the nation's banks and savings institutions.  The statute grants the FDIC, as receiver, broad powers to determine claims asserted against failed banks."  Henderson v. Bank of New England, 986 F.2d 319, 320 (9th Cir. 1993).  To effectuate these powers, FIRREA created an administrative procedure through which the FDIC can quickly and expeditiously evaluate claims against a failed bank "without unduly burdening the District Courts."  Id. (quoting H.R. Rep. No. 101-54(I), 101st Cong., 1st Sess., *reprinted in* 1989 U.S.C.C.A.N. 87, 215).  The claims resolution process functions as follows.

After the FDIC assumes the liabilities of a failed financial institution (becoming a "receiver"), the receiver then must provide notice of the claims process to all potential claimants by publication.  12 U.S.C § 1821(d)(3)(B)(i)–(ii).  Additionally, the FDIC must provide notice by mail to "any creditor shown on the [failed financial] institution's books" at the time of publication.  Id.  The notices are required to specify a deadline by which potential creditors must submit their claims to the receiver.  Id.  This deadline is referred to as the "bar date."  In general, once a claim is submitted, the FDIC has 180 days to determine whether to allow or disallow the claim.  If a claim is disallowed by the receiver, the receiver must issue a notice of disallowance that contains a statement of the reasons why the claim was rejected.  12 U.S.C. § 1821 (d)(5)(A)(iv).

If a claim is disallowed, the claimant may seek administrative reconsideration or judicial review.  12 U.S.C. § 1821(d)(5)–(7); see Benson v. JPMorgan Chase Bank, N.A., 673 F.3d 1207, 1214 (9th Cir. 2012) (noting that FIRREA provides for judicial review after exhaustion of the administrative claims process).  The provisions of FIRREA granting limited judicial review are set out in section 1821(d)(6), which is entitled "Provision for agency review or judicial determination of claims."  This section states:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**  JS-6

| Case No. | CV 13-863 CAS (AGRx) | Date | May 8, 2013 |
|---|---|---|---|
| Title | ROBERT POTTER, ET AL. V. JPMORGAN CHASE BANK, N.A., ET AL. | | |

> Before the end of the 60-day period beginning the earlier of–
>
> (i) the end of the period described in paragraph (5)(A)(i)[1] with respect to any claim against a depository institution for which the [FDIC] is receiver; or
> (ii) the date any notice of disallowance of such claim pursuant to paragraph (5)(A)(i),
>
> the claimant may . . . file suit on such claim (or continue an action commenced before the appointment of the receiver) in the district or territorial court of the United States for the district within which the depository institution's principal place of business is located or the United States District Court for the District of Columbia (and such court shall have jurisdiction to hear such claim).

If a claimant fails to seek judicial or administrative review within this sixty day period, "the claim shall be deemed to be disallowed . . . such disallowance shall be final, and the claimant shall have no further rights or remedies with respect to such claim." Section 1821(d)(6)(B).

Additionally, FIRREA sets out special rules for claims submitted after the bar date. Section 1821(d)(5)(C), entitled "Disallowance of claims filed after end of filing period," generally requires that claims filed after the bar date "shall be disallowed and such disallowance shall be final." FIRREA provides an exception to this strict rule, however, if "the claimant did not receive notice of the appointment of the receiver in time to file such claim before such date; and such claim is filed in time to permit payment of such claim." Id. § 1821 (d)(5)(C)(ii). Courts have interpreted this exception to allow the

---

[1] Paragraph (5) is entitled "Procedures for determination of claims," and section (5)(A)(i) provides that:

> Before the end of the 180-day period beginning on the date any claim against a depository institution is filed with the Corporation as receiver, the Corporation shall determine whether to allow or disallow the claim and shall notify the claimant of any determination with respect to such claim.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

| | **CIVIL MINUTES - GENERAL** | | JS-6 |
|---|---|---|---|
| Case No. | CV 13-863 CAS (AGRx) | Date | May 8, 2013 |
| Title | ROBERT POTTER, ET AL. V. JPMORGAN CHASE BANK, N.A., ET AL. | | |

FDIC to consider claims filed after the bar date if the claims arise out of events that take place after the bar date. Courts recognizing this exception reason that such claims could not have been filed before the bar date because they do not "come into existence until after the bar date." Heno v. FDIC, 20 F.3d 1204, 1207 (1st Cir. 1994).

As mentioned above, one of Congress's purposes in creating the administrative claims process was ensuring that claims against failed banks did not unduly burden federal district courts. Henderson, 986 F.2d at 320. Consequently, Congress made clear that the administrative claims process is the exclusive remedy for claims against insolvent banks. Section 1821(d)(13)(D), "Limitation on judicial review," provides that:

> Except as otherwise provided in this subsection, *no court shall have jurisdiction over*: (i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver; or (ii) any claim relating to any act or omission *of such institution* or *the Corporation* as receiver.

Id. (emphases added); see McCarthy, 348 F.3d at 1078 ("The phrase 'except as otherwise provided in this subsection' refers to a provision that allows jurisdiction after the administrative claims process has been completed.") Therefore, a claimant "must complete the claims process before seeking judicial review." Henderson, 986 F.2d at 321 (9th Cir. 1993); see F.D.I.C. v. Kane, 148 F.3d 36, 38 (1st Cir. 1998) ("The failure to participate in the administrative process constitutes a failure to exhaust one's administrative remedies, and thus, is a bar to judicial review.").

### B.     Whether FIRREA's Timeliness Requirements are Jurisdictional

As mentioned above, it is undisputed that no plaintiff has submitted a claim to the FDIC prior to the bar date, and the parties dispute whether plaintiffs' claims come within the scope of FIRREA's exception for untimely claims. Prior to determining whether the timeliness exception is met, however, the Court must address the threshold issue of whether FIRREA's timeliness rules are jurisdictional or whether they are better interpreted as substantive elements of a claim for relief under FIRREA.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

○

**CIVIL MINUTES - GENERAL**    JS-6

| Case No. | CV 13-863 CAS (AGRx) | Date | May 8, 2013 |
|---|---|---|---|
| Title | ROBERT POTTER, ET AL. V. JPMORGAN CHASE BANK, N.A., ET AL. | | |

Plaintiffs' argue that despite the "Limitation on Judicial Review" provided for in FIRREA, 12 U.S.C. § 1821(d)(13)(D), the rules requiring timely exhaustion of the administrative claims process are not jurisdictional. Plaintiffs' position is that FIRREA's timeliness rules should be construed as "claims processing rules" that are relevant to the merits of a claim against a failed bank, not a district court's jurisdiction over that claim. See Campell v. F.D.I.C., 676 F.3d 615, 618 (7th Cir. 2012); see also Carlyle Tower Condominium Ass'n, Inc. v. F.D.I.C., 170 F.3d 301, 310 (2d. Cir. 1999).

Plaintiffs acknowledge that this position runs contrary to decades old decisions of the Ninth Circuit interpreting FIRREA. See, e.g., Henderson, 986 F.2d at 320 ("Section 1821(d)(13)(D) strips all courts of jurisdiction over claims made outside the administrative procedures of section 1821."); Intercontinental Travel Marketing, Inc., 45 F.3d at 1284 ("We read the claims bar date to be a jurisdictional requirement."). However, according to plaintiffs, the Court should eschew reliance upon these decisions in light of recent Supreme Court authority regarding the distinction between jurisdictional rules and non-jurisdictional elements of a federal claim for relief. See Arbaugh v. Y&H Corp., 546 U.S. 500 (2006); Reed Elsevier, Inc. v. Muchnick, 559 U.S. 154 (2010); Henderson ex re. Henderson v. Shinseki, 131 S.Ct. 1197 (2011). Plaintiffs argue that these cases illustrate a change in the law away from interpreting statutory requirements as jurisdictional prerequisites and towards interpreting such requirements as elements of a claim for relief, and that these cases provide grounds for revisiting existing law regarding whether FIRREA's timeliness rules are jurisdictional.

In Arbaugh, the Supreme Court considered whether the fifteen employee requirement in Title VII was a jurisdictional prerequisite or nonjurisdictional limitation on a claim for relief. See 42 U.S.C. § 2000e(b) (defining the term "employer" to only include entities with fifteen or more employees); Arbaugh, 546 U.S. at 504. The Court began its analysis with a broad critique of federal jurisprudence concerning subject matter jurisdiction, stating that jurisdiction "is a word of many, too many, meanings," and that "[t]his Court, no less than other courts, has sometimes been profligate in its use of the term." Id. at 510. In particular, the Court noted that it had been "less than meticulous" in distinguishing between jurisdictional requirements and elements of a federal claim for relief. Id. (criticizing "drive-by jurisdictional rulings"). To clarify this distinction, the Court announced a "readily administrable bright line" rule for distinguishing

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  JS-6

| Case No. | CV 13-863 CAS (AGRx) | Date | May 8, 2013 |
|---|---|---|---|
| Title | ROBERT POTTER, ET AL. V. JPMORGAN CHASE BANK, N.A., ET AL. | | |

jurisdictional aspects of a claim and non-jurisdictional aspects of a claim. This bright line rule provides that:

> If the Legislature clearly states that a threshold limitation on a statute's scope shall count as jurisdictional then courts and litigants will be duly instructed and will not be left to wrestle with the issue. . . . But when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character.

Id. at 515 – 516. Applying that rule, the Court concluded that Title VII's fifteen employee requirement was not jurisdictional because it was not labeled as such. Id. at 515 – 516.

The Court subsequently applied this rule in Reed Elsevier and held that the requirement that a work of authorship be registered with the Copyright Office prior to filing a copyright lawsuit was also non-jurisdictional. Reed Elsevier, Inc., 559 U.S. at 1246 – 47; 17 U.S.C. § 411(a). Additionally, the Court applied the rule in Shinseki to hold that a one hundred and twenty day time limit for filing an administrative appeal to the Board of Veterans' Appeals was non-jurisdiction. Shinseki, 131 S.Ct. at 1204; 38 U.S.C. § 7266(a). Neither of these rules were cast using the term "jurisdiction," and all were set out in sections separate from other aspects of the statutes granting federal courts jurisdiction. See, e.g., id. at 1205 ("Congress elected not to place the 120–day limit in the VJRA subchapter entitled 'Organization and Jurisdiction.'"). Additionally, this new line of Supreme Court authority has led the Ninth Circuit to overrule many of its decisions regarding the distinction between jurisdictional rules and non-jurisdictional rules. See, e.g., Leeson v. Transamerica Disability Income Plan, 671 F.3d 969, 979 (9th Cir. 2012) (overruling prior case law holding that participant status as defined in 29 U.S.C. § 1002(7) is a jurisdictional prerequisite to bringing a claim under ERISA).

Since the Arbaugh clear statement test has been influential in reforming federal law regarding the distinction between jurisdictional and non-jurisdictional requirements for bringing a claim, the Court agrees that there are grounds for revisiting the question whether FIRREA's timeliness rules are jurisdictional. The Court therefore applies Arbaugh's "clear statement" test to FIRREA.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  JS-6

| Case No. | CV 13-863 CAS (AGRx) | Date | May 8, 2013 |
|---|---|---|---|
| Title | ROBERT POTTER, ET AL. V. JPMORGAN CHASE BANK, N.A., ET AL. | | |

As an initial matter, it is transparent from the text of FIRREA that Congress intended to create threshold limitations on courts' subject matter jurisdiction. In section 1821(d)(13)(D), Congress explicitly set out a "[l]imitation on judicial review," and stated that courts lacked jurisdiction over claims against failed banks "[e]xcept as otherwise provided in this subsection." This text shows that Congress structured FIRREA to broadly deprive federal courts of subject matter jurisdiction, and then to specifically enumerate the particular situations in which federal jurisdiction exists. To resolve the question whether FIRREA's timeliness requirements are jurisdictional, then, the Court must determine whether FIRREA's jurisdiction granting provisions extend to both timely and untimely claims, or only to timely claims.

Plaintiffs argue that untimely claims fall squarely within the jurisdiction granting provisions set out in section 1821(d)(6)(A). These provisions state that within the sixty day period after a claimant receives either a notice of disallowance from the FDIC or receives no response from the FDIC one-hundred and eighty days after submitting a claim, the claimant is entitled to file suit on their claim in federal court. 12 U.S.C. § 1821(d)(6)(A)(i) – (ii). The only mention of untimely claims in subsection (d)(6) states that claims must be filed within the sixty day period. Id. § 1821(d)(6)(B). Plaintiffs conclude that because the grant of jurisdiction is not explicitly limited to timely claims, it grants courts jurisdiction to review both timely claims and untimely claims submitted to the FDIC.

The defect in this argument is that it fails to acknowledge that FIRREA places explicit limits on claims filed after the bar date. Specifically, subsection 1821 (d)(5)(C)(i) states not only that claims filed after the bar date generally "shall be disallowed," but also states that "such disallowance shall be *final*." Id. § 1821(d)(5)(C)(i) (emphasis added). This language contemplates that if a claimant files an untimely claim that does not meet the statutory exceptions, it shall be immediately denied by the FDIC, and no further litigation is authorized. Since FIRREA contains broad jurisdiction stripping language, this language is best construed to mean that courts lack power to consider untimely claims filed against a failed bank not meeting FIRREA's exceptions. See Arbaugh, 546 U.S. at 514 (noting that subject matter jurisdiction "involves a court's power to hear a case").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  JS-6

| Case No. | CV 13-863 CAS (AGRx) | Date | May 8, 2013 |
|---|---|---|---|
| Title | ROBERT POTTER, ET AL. V. JPMORGAN CHASE BANK, N.A., ET AL. | | |

This interpretation is confirmed by the language setting out the exceptions under which FIRREA authorizes claims filed after the bar date. This language states that if the statutory exceptions are met, an untimely claim "may be *considered* by the receiver." 12 U.S.C. § 1821(d)(5)(C)(ii). The natural implication from this language is that if the statutory exceptions are not met, claims may not be considered by the receiver. Since Congress therefore intended to deprive even the FDIC as receiver of power to consider non-exempt claims filed after the bar date, it is apparent that Congress also intended to deprive federal courts of power to hear such claims.

Consequently, while the jurisdiction granting provisions of FIRREA do not distinguish between timely and untimely claims, they are best interpreted not to extend to non-exempt untimely claims. FIRREA is clear that non-exempt claims filed after the bar date are to be disallowed, and that neither a Court nor the receiver has power to hear them. The jurisdiction granting provisions in subsection (d)(6) are therefore best interpreted to presuppose that the claimant has complied with the procedural requirements in subsection (d)(5). The Court therefore concludes that under FIRREA, a court has no subject matter jurisdiction to hear a claim filed against a failed bank after the bar date, unless the claim meets the statutory exception for untimely claims.[2]

### C. Whether Plaintiffs Satisfy FIRREA's Exception for Untimely Claims

The Court next considers whether plaintiffs have satisfied FIRREA's exception for claims filed after the bar date. As the Court mentioned above, under section 1821(d)(5)(C)(ii), the FDIC need not disallow a claim filed after the bar date if "the

---

[2] Moreover, while plaintiffs claim that decisions in the Second and Seventh Circuit have reached contrary results, plaintiffs misread these decisions. The two decisions – Campell v. F.D.I.C., 676 F.3d 615, 618 (7th Cir. 2012) and Carlyle Towers Condominium Ass'n, Inc. v. F.D.I.C., 170 F.3d. 301, 310 (2d Cir. 1999) – only stand for the proposition that untimely claims are not categorically subject to section 1821's jurisdictional bar because the statute itself contains exceptions for certain kinds of untimely claims. See Farnik v. F.D.I.C., 707 F.3d 717, 721 n. 1 (7th Cir. 2013) (limiting Campell). They do not reject the idea that section 1821 requirements are jurisdictional in nature, and hence are not at variance with the Court's conclusion.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**   JS-6

| Case No. | CV 13-863 CAS (AGRx) | Date | May 8, 2013 |
|---|---|---|---|
| Title | ROBERT POTTER, ET AL. V. JPMORGAN CHASE BANK, N.A., ET AL. | | |

claimant did not receive notice of the appointment of the receiver in time to file such claim before such date; and such claim is filed in time to permit payment of such claim." Courts have interpreted this language to allow claimants to assert untimely claims as long as those claims arose after the bar date. Heno v. F.D.I.C., 20 F.3d 1204, 1209 (1st Cir. 1994); Carlyle Towers Condominium Ass'n, Inc. v. F.D.I.C., 170 F.3d 301, 306 (2d. Cir. 1999); Stamm v. Paul, 121 F.3d 635, 641 (11th Cir. 1997). These courts reason that if a claim arises only after the bar date, it is not possible to file the claim prior by the announced deadline, which means that the claim falls within the language of section 1821(d)(5)(C)(ii).

Plaintiffs argue that they fall within this exception because they only learned of their claims after the bar date, and allege that their inability to file their claims can be traced to WMB's wrongful acts. Plaintiffs argue that it would be absurd and unfair to require them to file their claims during the pre-bar date period – a time at which they were unaware of the fact that they had any claims to file – because FIRREA was "never intended to create roadblocks to review of the claims of worthy creditors." Beck Business Center, Inc. v. Michigan Heritage Bank, 2010 WL 3258376, at *7 (E.D. Mich. 2010); see also Whatley v. Resolution Trust Corp., 32 F.3d 905, 910 ("[FIRREA] did not structure a system for the sandbagging of valid claims. The statute is not to be used as an easy means of avoiding consideration of claims on their merits.").

Plaintiffs' argument asks the Court to create new law by significantly expanding FIRREA's limited exception for untimely claims. At present, the case law only allows a plaintiff to assert a claim after the bar date if the claim seeks recovery arising out of events that took place after the bar date. In Heno, for instance, the plaintiff's claim arose out of the FDIC's failure to abide by a failed bank's executory contract at a time several months after the bar date. Heno, 20 F.3d at 1205 – 1206. Similarly, in Carlyle Towers, the plaintiffs asserted claims against a failed bank arising out of conditions in a condominium development that developed long after the claims bar date. Carlyle Towers, 170 F.3d at 302 – 303. Moreover, there is a clear distinction between claims that are unknown at the time of the bar date and claims that arise out of events taking place after the bar date. Without bending the laws of time and space, claims in the latter category cannot be brought before the FDIC prior to the claims bar date. In plaintiffs' case, however, there is no contention that it would have been impossible or nearly impossible for them to assert their claims prior to the bar date, but only that it is

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**  JS-6

| Case No. | CV 13-863 CAS (AGRx) | Date | May 8, 2013 |
|---|---|---|---|
| Title | ROBERT POTTER, ET AL. V. JPMORGAN CHASE BANK, N.A., ET AL. | | |

unreasonable to expect them to file claims during a time period when they were unaware of those claims.[3]

The Court declines to expand the untimeliness rule to encompass unknown claims. First, the statutory text does not support a rule based on a claimant's knowledge. If a plaintiff's claim has accrued prior to the claims bar date, then it has accrued at "in time [for the plaintiff] to file such claim," even if the plaintiff lacks knowledge of the claim. 1821(d)(5)(C)(ii). The plaintiff's lack of knowledge could, in actuality, prevent the plaintiff from filing a claim, but whether a claim is actually filed is not relevant to whether the plaintiff received notice of the receivership in time to file a claim. Instead, the statutory text supports a rule based on literal impossibility. If a plaintiff's claim arises later in time than the bar date, only then is it true that "the claimant did not receive notice of the appointment of the receiver in time to file such claim." 12 U.S.C. § 1821(d)(5)(C)(ii).

Additionally, recognizing a broad exception for claimants without knowledge of their claims prior to the bar date runs contrary to FIRREA's purpose of empowering the FDIC to expeditiously resolve claims against a failed bank's assets without placing an undue burden on federal district courts. Determining whether a claimant knew or should have known about a claim prior to the bar date is potentially a complex, fact intensive determination. Requiring courts to make this determination would burden both the courts and the FDIC with significant litigation over claims filed after the claims bar date. This result would undermine the both the meaningfulness of the statutorily imposed claims bar date and FIRREA's purpose, which weighs heavily against plaintiffs' proposed rule. In contrast, the existing rule – which focuses on whether a claim is based on events taking place after the bar date – is more easily administrable. While it may not always be clear whether a claim arises out of pre-bar date events or post-bar dates events, this inquiry is nonetheless more straightforward than an inquiry complicated by taking into account a plaintiff's knowledge. A rule limited to claims that could not possibly have been filed prior to the bar date is therefore more closely in accord with FIRREA's purpose.

---

[3] In fact, since WMB ceased to exist on September 5, 2008, the day the FDIC receivership began, plaintiffs' claims could not have arisen out of WMB's acts after the bar date.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

○

**CIVIL MINUTES - GENERAL**  JS-6

| Case No. | CV 13-863 CAS (AGRx) | Date | May 8, 2013 |
|---|---|---|---|
| Title | ROBERT POTTER, ET AL. V. JPMORGAN CHASE BANK, N.A., ET AL. | | |

The Court therefore follows the established rule that untimely claims only fall within FIRREA's exception when it would have been impossible to file them before the claims bar date, and therefore finds that all of plaintiffs' claims are untimely.

### D. Whether Plaintiffs Received Adequate Notice

Even if their claims do not meet FIRREA's timeliness requirements, plaintiffs argue that they should nonetheless be allowed to pursue their claims because they did not receive adequate notice of the claims bar date and the timely filing requirements. Specifically, plaintiffs contend that the publication notice executed by the FDIC complied with neither the statutory requirements set out in FIRREA nor the constitutional notice requirements under the due process clause.

Plaintiffs contend that FIRREA's statutory requirements were not met because the FDIC did not publish adequate notice of the receivership and claims bar date in a California newspaper, but only in out-of-state newspapers. Plaintiffs point out that two of the newspapers where the FDIC published notice – the Seattle Times and the Las Vegas Review-Journal – are not circulated widely in California. While plaintiffs acknowledge that notice was also published in the Wall Street Journal, they contend that the Wall Street Journal publications did not meet FIRREA's publication notice requirements. Specifically, plaintiffs point out that FIRREA requires the FDIC to publish an initial notice and then "republish such notice approximately 1 month and 2 months, respectively, after the [initial] publication." 12 U.S.C. § 1821 (d)(3)(B)(ii). Since the FDIC admittedly only published notice in the Wall Street Journal on two occasions, not three, publication in the Wall Street Journal did not satisfy FIRREA. Plaintiffs conclude that because statutorily adequate notice was only published in out of state newspapers, they should be allowed to file late claims due to lack of notice.

The Ninth Circuit has held that failure to provide adequate notice of the bar date does not necessarily give a claimant the right to file an untimely claim. Intercontinental Travel Marketing, Inc., 45 F.3d at 1285. Failure to receive statutorily adequate notice only allows a claimant to file an untimely claim where the FDIC's failure to provide notice about the claims bar date amounts to "affirmative misconduct;" mere negligence does not excuse compliance with the timely filing requirement. Id. Consequently, even if it is true that plaintiffs were not given adequate notice of the claims bar date under

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

○

**CIVIL MINUTES - GENERAL**  JS-6

| Case No. | CV 13-863 CAS (AGRx) | Date | May 8, 2013 |
|---|---|---|---|
| Title | ROBERT POTTER, ET AL. V. JPMORGAN CHASE BANK, N.A., ET AL. | | |

FIRREA, this does not warrant granting relief from the timeliness requirements because nothing indicates that there has been affirmative misconduct on the part of the FDIC. On the contrary, the only defect plaintiffs identify is the failure publish a third notice in the Wall Street Journal, and while the FDIC undoubtedly should have followed the letter of FIRREA, its peripheral non-compliance does not justify allowing plaintiffs to circumvent FIRREA's timeliness rules by filing claims years after the deadline.[4]

Turning next to plaintiffs' constitutional argument, plaintiffs assert that the publication notice provided for by FIRREA does not meet the due process standards announced by the Supreme Court in Schroeder v. City of New York, 371 U.S. 208, 211 – 212 (1962), which held that "notice by publication is not enough with respect to a person whose name and address are known or very easily ascertainable and whose legally protected interests are directly affected by the proceedings in question." Id. Under this rule, plaintiffs argue that the FDIC was required to provide each of them with notice of the claims resolution process by mail or personal service because the FDIC had access to each of their names and addresses, which appeared in WMB's records.

Plaintiffs' argument overlooks the fact that the FDIC, at the time it gave publication notice, had no reason to believe that plaintiffs were creditors of WMB who intended to file an administrative claim. Notice by publication is only insufficient when an individual's legally protected interest affected by a proceeding are known to the party charged with giving notice. See Mullane v. Central Bank & Trust Co., 339 U.S. 306, 317 (1950) (notice by publication sufficient for individuals "whose interests or whereabouts could not with due diligence be ascertained"). By contrast, notice by publication is acceptable for individuals "whose interests are either conjectural or future or, although they could be discovered upon investigation, do not in due course of business come to knowledge of [the entity charged with giving notice]." Id. In fact, where the FDIC has knowledge of the fact that a particular individual is a creditor of a failed bank, FIRREA

---

[4] Additionally, even if notice was not published in the Wall Street Journal a third time, there is no requirement in FIRREA that the FDIC provide the exact same form of notice three times, but only that notice be republished three times. 12 U.S.C. § 1821 (d)(3)(B). Consequently, there is no statutory basis on which to disregard the fact that notice was published in the Wall Street Journal on two occasions.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**     JS-6

| Case No. | CV 13-863 CAS (AGRx) | Date | May 8, 2013 |
|---|---|---|---|
| Title | ROBERT POTTER, ET AL. V. JPMORGAN CHASE BANK, N.A., ET AL. | | |

requires the FDIC to provide notice to that individual by mail. 12 U.S.C. § 1821(d)(3)(C). Publication notice of the kind provided to plaintiffs was therefore consistent with due process because the FDIC did not have knowledge of their claims against WMB's assets.

The Court concludes that plaintiffs received adequate notice both under FIRREA and the due process clause, and rejects their argument that lack of notice excuses their failure to file a timely claim. Therefore, because plaintiffs' claims were not timely filed with the FDIC in compliance with FIRREA, the Court dismisses the claims against WMB for lack of subject matter jurisdiction.[5]

## V. CONCLUSION

In accordance with the foregoing, the FDIC's motion to dismiss for lack of subject matter jurisdiction is GRANTED. Additionally, because the FDIC's presence of this case was the sole basis upon which the Court exercised jurisdiction over this case, the Court declines to exercise supplemental jurisdiction over the remainder of the case, and hereby REMANDS this case to Los Angeles County Superior Court.

IT IS SO ORDERED.

|  | 00 : 00 |
|---|---|
| Initials of Preparer | CMJ |

---

[5] Even after FDIC-Receiver's dismissal from this case, the Court has subject matter jurisdiction by virtue of FDIC-Receiver's inclusion as a defendant in this action, however briefly. See Brockman v. Merabank, 40 F.3d 1013, 1018 n. 2 (9th Cir. 1994); Executive Software v. United States Dist. Court, 24 F.3d 1545, 1562 (9th Cir.1994). However, the only claims remaining in this action are state law claims against the non-FDIC defendants. Because the Court has "dismissed all claims over which it has original jurisdiction," 28 U.S.C. 1367(c)(3), the Court declines to exercise supplemental jurisdiction over plaintiff's remaining state-law claims. This decision is "purely discretionary." Carlsbad Tech., Inc. v. HIF Bio, Inc., 556 U.S. 635, 639 (2009); see also Acri v. Varian Associates, Inc., 114 F.3d 999, 1001 (9th Cir. 1997). Declining supplemental jurisdiction is particularly appropriate in this case, where plaintiffs' claims have already been pending in state court for a substantial period of time.